## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NYHEIM REAVES,** | : | **CIVIL NO. 3:21-CV-1282** |
| | : | |
| **Plaintiff,** | : | **(Judge Saporito)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JENNIFER ROSSMAN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM AND ORDER

### I.     Background

In the instant case we are called upon to consider whether we should take the extraordinary step of appointing a guardian *ad litem* for the *pro se* prisoner plaintiff, Nyheim Reaves. This issue comes before us in an unusual factual context. Nyhiem Reaves undoubtedly struggles with a number of chronic mental health conditions including depression, PTSD and ADHD. His current legal claims, at bottom, assert that the conditions of his confinement have exacerbated these emotional impairments. We have previously attempted to find counsel to aid Reaves in the presentation of his claims, but without success. We are now asked whether Reaves' condition is so severe that the appointment of a legal guardian in warranted in this case. We must consider this question against a factual backdrop where Reaves has previously been deemed mentally competent.

By way of background, Reaves, acting *pro se*, has litigated this case since July

of 2021, albeit often with the assistance of an inmate writ writer. Currently, this case

is proceeding forward on due process and Eighth Amendment claims relating to what

Reaves alleges was an excessively prolonged two and one half year period of solitary

confinement which has exacerbated his existing mental health symptoms. (Doc.

114). We previously sought volunteer counsel to assist Reaves in the presentation of

this claim in June of 2024, but to no avail; no counsel was willing and prepared to

undertake this case. (Docs. 119, 122).

Reaves' remaining claims have moved forward into discovery. In the course

of this discovery, on October 20, 2025, we received correspondence from defense

counsel which reported as follows:

> On October 20, 2025, undersigned counsel for Defendants attempted to
> take the deposition of Mr. Reaves. Prior to this deposition, Mr. Reaves
> informed undersigned counsel that he was not able to competently
> testify at the deposition due to his medication. Undersigned counsel
> conducted a very short deposition to place the matter on the record.
> During this question and answer session, Mr. Reaves indicated that his
> medication would prevent him from providing truthful testimony and
> he did not know whether he would be able to provide truthful testimony
> while taking the medication due to the side effects he was experiencing.
> Mr. Reaves indicated that the medication caused him to be drowsy and
> have a difficulty in comprehending questions. Based on the answers to
> undersigned counsel's questions, undersigned did not proceed with the
> deposition due to the competency concerns. Counsel for Defendants is
> hoping for guidance from the Court on how to proceed due to the
> competency concerns of the Plaintiff.

(Doc. 153).

Given these expressed competence concerns, we initiated a process designed

to ascertain whether Reaves' mental impairments warranted the appointment of a

guardian *ad litem* for the plaintiff. As part of this process, on November 26, 2025,

we entered an order prescribing the following procedure for addressing this question:

> In order to determine whether Reaves is entitled to relief under Rule 17(c), on or before **November 19, 2025**, the plaintiff shall submit any argument, information or evidence from an appropriate court of record or a relevant public agency indicating that he had been adjudicated incompetent, or submit any verifiable evidence from a mental health professional demonstrating that he is being or has been treated for mental illness of the type that would render him legally incompetent. Such evidence may be submitted with a request that it be filed under seal in order to protect the plaintiff's privacy.
>
> On or before **December 3, 2025**, the Department of Corrections, through defense counsel, may respond and submit under seal any evidence, information or argument it possesses relevant to the issue of the plaintiff's mental competence.

(Doc. 158).

We have now received these submissions. The parties' filings provide us with

insights into Reaves' chronic mental health problems from two different time

frames. Yet while they differ in their temporal scope, the mental health records we

have received share several common elements. They contain similar diagnoses;

consistently corroborate Reaves' ongoing emotional impairments; but generally

describe Reaves as mentally competent.

For his part, Reaves indicated that he has been designated as a seriously

mental ill inmate by the Department of Corrections since 2018. (Doc. 159). Reaves

also provided a June 2021 report which assessed his competence in connection with

some pending criminal charges. (Doc. 159-1). That report concluded that Reaves suffered from a major depressive disorder, PTSD, and ADHD since 2018. (Id.) He was deemed to suffer from significant interference with executive functioning, severe anxiety and moderately severe depression. However, in this criminal context, Reaves was ultimately deemed mentally competent and capable of entering a plea of guilty, but mentally ill. (Id.)

The Department of Corrections, in turn, has submitted some 76 pages of contemporaneous mental health treatment describing Reaves' current condition, which we are filing under seal in this case. In general terms, these records reveal that Reaves has been diagnosed with major depression, PTSD, adult anti-social behavior disorder, and chronic drug use disorders. He has a history of some suicide attempts, although current treatment notes suggest that he is not presently experiencing suicidal ideation. He is actively undergoing mental health treatment within the prison system consisting of psychotropic and mood stabilizing medications. Reaves has been deemed competent to give informed consent to this medication and has, in fact, provided informed consent. Reaves also participates in individual or group therapy and is encouraged to learn and practice coping skills as well as engaging in positive interactions with peers and staff.

While contemporaneous mental health assessments have noted instances of guarded and paranoid behavior on Reaves' part, along with some unrealistic thinking

as it related to his prospects for parole, for the most part the current clinical record is largely unremarkable. Staff consistently report that Reaves displays fair judgment and insight; has normal attention; is oriented within normal limits; and has logical thought processes and normal thought content.

It is against this clinical backdrop that we consider whether appointment of a guardian *ad litem* for Reaves is necessary in this case.

## II.    Discussion

### A. Appointment of Guardian *Ad Litem*, Guiding Principles.

Rule 17(c) of the Federal Rules of Civil Procedure guides us in considering these competency concerns identified by the parties relating to a *pro se* litigant and provides that: "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17 (c). Decisions regarding the appointment of a guardian *ad litem* in federal court rest in the sound discretion of the court and will not be set aside absent an abuse of that discretion. Powell v. Symons, 680 F.3d 301, 306 (3d Cir. 2012). Nonetheless, the exercise of this discretion is guided by several fundamental, overarching principles.

In order to determine whether appointment of a guardian *ad litem* is

appropriate in a given case we must first assess whether Reaves is incompetent since

"[t]he obligation imposed by the final sentence of Rule 17(c)—the duty to 'appoint'

or 'make such other order'—arises after a determination of incompetency." <u>Ferrelli</u>

<u>v. River Manor Health Care Ctr.</u>, 323 F.3d 196, 201 (2d Cir. 2003). Further, while a

*pro se* litigant is not required to file a formal motion to trigger an inquiry into his or

her mental competence, <u>Id</u>. at 202 n. 4, if we "were presented with evidence from an

appropriate court of record or a relevant public agency indicating that the party had

been adjudicated incompetent, or if the court received verifiable evidence from a

mental health professional demonstrating that the party is being or has been treated

for mental illness of the type that would render him or her legally incompetent," then

it would seem that relief under Rule 17 (c) would be appropriate. <u>Id.</u> at 201.

As for the substantive standards which guide this competency evaluation, as

the Third Circuit has observed:

> [I]t is the federal district court's obligation to issue an appropriate order
> "to protect a minor or incompetent person who is unrepresented in an
> action." Fed.R.Civ.P. 17(c)(2). This court has yet to set forth the factors
> that warrant *sua sponte* inquiry into a litigant's capacity to sue or be
> sued under Rule 17(c) and the Rule itself does not offer any
> commentary. However, the Second Circuit has set forth a well-reasoned
> standard that has been adopted elsewhere and that we adopt under the
> circumstances here. In <u>Ferrelli v. River Manor Health Care Center</u>, 323
> F.3d 196, 201 (2d Cir.2003), that Court concluded that a district court
> need not inquire *sua sponte* into a pro se plaintiff's mental competence
> based on a litigant's bizarre behavior alone, even if such behavior may
> suggest mental incapacity. That is an important limiting factor as to the
> application of Rule 17. The federal courts are flooded with pro se
> litigants with fanciful notions of their rights and deprivations. We

cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke Rule 17. That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence. . . . .

With regard to the question of whether there is verifiable evidence of incompetence, the <u>Ferrelli</u> Court concluded that a district court would likely abuse its discretion if it failed to consider whether Rule 17(c) applied "[i]f a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." <u>Id</u>. We also agree with the Fourth Circuit in <u>Hudnall v. Sellner</u>, 800 F.2d 377, 385 (4th Cir.1986), that bizarre behavior alone is insufficient to trigger a mandatory inquiry into a litigant's competency but "if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought into play." The <u>Ferrelli</u> Court noted that it was "mindful of the need to protect the rights of the mentally incompetent," but at the same time "in light of the volume of pro se filings in [the Second] Circuit," it could not "disregard the potential burden on court administration associated with conducting frequent inquiries into pro se litigants' mental competency." 323 F.3d at 201. We share the same concern. It follows that the district court must satisfy its duty of inquiry before it proceeds to determine if Rule 17 applies.

<u>Powell v. Symons</u>, 680 F.3d 301, 307 (3d Cir. 2012).

Subsequently the Court of Appeals provided further guidance regarding what type of evidence satisfies the evidentiary burden of showing a litigant's mental incompetence, the touchstone for appointment of a guardian *ad litem*. As the Court explained:

A court's obligation under Rule 17 to appoint a guardian for an incompetent person is mandatory. <u>Powell v. Symons</u>, 680 F.3d 301, 303 (3d Cir. 2012). A district court must invoke Rule 17 sua sponte and

7

consider whether to appoint a representative for an incompetent person when there is "verifiable evidence of incompetence."[4] Id. at 307. Verifiable evidence of incompetence includes (1) "evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent," or (2) "evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." Id. (quoting Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 (2d Cir. 2003)). Therefore, anecdotal information or layperson opinions do not constitute verifiable evidence.

Mondelli v. Berkeley Heights Nursing & Rehab. Ctr., 1 F.4th 145, 149 (3d Cir. 2021).

### B. **Appointment of a Guardian Ad Litem is Not Necessary Here**.

Bound by these legal guideposts, we conclude that appointment of a guardian *ad litem* for Reaves is not necessary in this case. Turning to the threshold question we must address—namely, whether there has been a sufficient showing of mental incompetence on Reaves part to justify appointment of a guardian *ad litem* under Rule 17—we find that the evidence demonstrates that Reaves is mentally ill but does not support a finding of mental incompetence. On this score we have been enjoined to look to two categories of proof to make this determination: (1) evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or (2) evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent. Id.

We are presented with neither type of proof in this case. At the outset, this

case is decidedly unlike <u>Powell v. Symons</u>, 680 F.3d 301 (3d Cir. 2012), where the prisoner plaintiff had been adjudicated mentally incompetent in a criminal case. Quite the contrary, in this case, Reaves' own submissions reveal that he has been found mentally ill, but competent. Thus, we do not have evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent.

Nor are we presented with evidence from a mental health professional demonstrating that Reaves is being or has been treated for mental illness of the type that would render him legally incompetent. Instead, Reaves' contemporaneous treatment history confirms that he is mentally ill, but competent. For example, these treatment notes indicate that Reaves displays fair judgment and insight; has normal attention; is oriented within normal limits; and has logical thought processes and normal thought content. Reaves is also deemed to be capable of providing informed consent for mental health treatment and has done so.

On these facts, it simply cannot be said that Reaves displays the type of profound mental incompetence which is a prerequisite for appointment of a guardian *ad litem* under Rule 17. Therefore, we are constrained to deny this request. We reach this conclusion with some reservations since Reaves—a mentally ill inmate—undoubtedly faces significant hurdles in advancing legal claims based upon the alleged exacerbation of his emotional impairments due to prolonged solitary

9

confinement. However, we are also confronted with the stark reality that what Reaves really needs to advance these claims is an attorney trial advocate, rather than a guardian *ad litem*. Yet, despite our best efforts to secure volunteer counsel for the plaintiff in 2024 there were no attorneys available to step forward at that time and assist Reaves on a *pro bono* basis. Moreover, we lack to authority to compel counsel to participate in this civil litigation since *pro se* "litigants have no statutory right to appointed counsel." Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).

Simply stated, this case presents a dilemma: How do we endeavor to ensure that a mentally ill, but competent, *pro se* prisoner plaintiff is afforded a fair opportunity to present legal claims relating the impact of solitary confinement upon his mental health in a legal setting where these is no statutory right to counsel? Acknowledging that the law provides no perfect answers to this question and conceding that the appointment of a guardian *ad litem* is unwarranted, we will appeal to the professionalism of the *pro bono* bar and make a second, and final, request that counsel volunteer to assist Reaves in this case.

An appropriate order follows.

### III.   Order

AND NOW this 5th day of January 2026, IT IS ORDERED as follows:

First, to the extent that Reaves seeks the appointment of a guardian *ad litem* pursuant to Rule 17, this request is DENIED.

Second, construing Reaves' pleadings as a second request for appointment of counsel, and acting out of an abundance of caution, we conditionally **GRANT** this request, provided that a member of the *Pro Bono* panel of the Middle District of Pennsylvania Chapter of the Federal Bar Association agrees to volunteer to represent Plaintiff. Plaintiff is advised that locating *pro bono* counsel may take some time; he will be notified in writing of the results of the search for counsel as soon as possible. The *Pro Bono* Coordinator for Middle District of Pennsylvania Chapter of the Federal Bar Association shall report to the Court on the progress of identifying *pro bono* counsel on or before **February 5, 2026.** If the court is unsuccessful in its efforts to locate *pro bono* counsel to represent Plaintiff, he shall proceed *pro se*, and this order conditionally granting the motion for appointment of counsel will be vacated.

A copy of this order will be served upon the *Pro Bono* Coordinator for Middle District of Pennsylvania Chapter of the Federal Bar Association.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

11